This next case is 4-14-0702. In re the Marriage of Carol Wells and Jeff Wells. Appearing for the appellant is Dawn Wall and for the appellee, Helen Ogar. Ms. Wall, are you ready to proceed? I am, Your Honor. Alright, you may. May it please the Court. Counsel, my name is Dawn Wall and I am here on behalf of the appellant, Jeff Wells. I would like to refer to him as the father in this particular case and Carol Wells as the mother. We are here on review of three decisions that were entered by the Circuit Court in this case. It has been a long-standing proceeding. Initially, the parties were before His Honor, Charles Reinard, in 2011 on visitation issues. In May of 2011, Judge Reinard bifurcated the visitation issues from the financial issues. A determination was made by Judge Reinard in October of 2011 relating to a visitation issue. The only particular error that we're asserting with respect to that visitation finding is the right of first refusal. The other two issues that we are asserting before Your Honors today relate to child support determinations that were made by Judge Reinard, one in August of 2012 and then a subsequent determination in July of 2014. There was a long period of time between the August 2012 findings and then ultimately the findings by Judge Reinard with particular dollar amounts in July of 2014. The critical issue or the center, I think, issue for consideration by Your Honors with respect to that August 2012 decision is language that is in the actual judgment of dissolution of marriage of the parties and relates to an entry of an agreement by the parties in this case relating to a downward deviation. The parties in 2007, September, agreed to set child support at a reduced amount from the statutory guidelines and in fact the specific language in the judgment of dissolution suggests that the downward deviation was determined in September of 2007 to be a $900 downward deviation. At some point in time, mother decides that there are tax consequences that she may experience as a consequence of that particular $900 offset, as it's mentioned in the language of the judgment of dissolution, being treated in some manner as downward deviation versus maintenance. And so she files a petition to modify to suggest to the court that there was a substantial change of circumstance based on the treatment of that downward deviation by the IRS. In 2009, Judge Suk looked at that decision and said, I'm going to leave it to the IRS. This is not a decision for this court to make a decision. And then in March of 2011, mother files a two-count petition seeking to modify the child support downward deviation and terms it maintenance. She asserts in count one of her petition to modify that the fact that the tax court has embraced particular treatment of that $900 downward deviation created a substantial change of circumstance. In count two, she then asserts that the economic change in father's income in 2011 compared to what it was in 2007 supports its own substantial change of circumstance. And so the parties and Judge Reinert went forward on that petition seeking modification. There was a hearing where we actually presented evidence by mother and father, and mother called an accountant to relate the nature of what that $900 did in terms of mother's tax return. But father asserted certainly throughout these proceedings that that $900 reduction was actually a downward deviation from the child support guidelines. Now, the statutory language in the judgment order very specifically says that that downward deviation shall remain for a period of five years and shall be considered in future decisions of any child support modification. So Judge Reinert, in reviewing that language, has to make a decision on how to treat that particular provision and apply it to the parties going forward. Now, the judgment also had an example of how you apply that deviation or downward deviation or offset or whatever we're calling it, correct? That is correct, Your Honor. It did indicate by way of example that if father's actual child support obligation was going to be $1,600, then actually the application of the deviation would make his child support payment $700. And we argued that that certainly was evidence to suggest that it was a downward deviation from the statutory guidelines as opposed to a maintenance. We would assert that the language in the judgment of dissolution clearly relates to an offset and that the downward deviation was in fact an offset from the statutory guidelines. The mother in this particular case argued successfully to Judge Reinert that notwithstanding the fact that it was a downward deviation from the statutory guidelines, it had a sunset provision. And that after a five-year period, it was no longer given any consideration. How was that not a reasonable reading when you had dates on when it was to be in effect? Well, I would assert to Your Honor that the additional language in the judgment for dissolution of marriage doesn't actually say it's a sunset provision. It indicates that it shall be effective for that five-year period. I would assert that that plain language means it's not modifiable during that five-year period unless there's a substantial change of circumstance. For example, if mother lost her job at IBM, would she be able to come in and then argue that the deviation wasn't appropriate? I think she could have done that, but I think it required a showing of a substantial change of circumstance. The language then goes on to state that the offset or the deviation shall be considered in future instances of modification of child support. And it doesn't, it's not limiting in that respect to that language. And then it goes on to say it shall terminate in the event three particular things happen. And so I would assert to Your Honors that because it's child support, because it was a determined and agreed to downward deviation from the guidelines, that that particular circumstance is in play going forward anytime the court considers what the appropriate child support amount would be. I think anytime parties are in a position... Why put in the dates if it's forever? Well, it only indicates the date. Set offset of 900 per month shall continue for a period of five years, shall be considered in future instances. So I read that that at a minimum it is in place for five years unless there is a showing of a substantial change of circumstance. I don't think that we can read that language as a sunset automatic provision without giving effect to the second part of that language, which is shall be considered in future instances of modification of child support. And I guess my assertion on father's behalf is that even if the judgment of dissolution doesn't spell out that it should be applied in future instances, certainly the circumstances of the parties that were presented by the evidence that was presented to Judge Reinhardt clearly under Section 505 require consideration by the trial court on whether or not there should be a downward deviation. Judge Reinhardt actually finds that in the inheritance piece of his order. In July of 2014, he essentially says as a sitting judge giving consideration to this issue of substantial change of circumstances, I have to weigh all of these things, including the factors under 505 that would support a downward deviation. So I would assert on behalf of the father that even if the judgment of dissolution language didn't say that you should consider this in future child support modifications, that the court has an obligation to do that. I believe that the court has an obligation under 505 to weigh the factors. And in this particular case, that would be true, I think, notwithstanding interpretation of this downward deviation language. Sure, and I don't think that's necessarily inconsistent with what I'm asking you. I guess my question is, is it your position that sometime during this five-year period this deviation was not considered? No, I think nobody sought to have it changed until 2011, March of 2011. At that point in time, mother asserts to have this downward deviation changed because she says my circumstances have changed. And those circumstances have been substantial in that I thought I was going to get a tax relief benefit out of this language, and now I'm not. And your position is the language precludes her from asking the court for that relief? No, I think that language precludes her from getting relief unless she can show a substantial change in circumstance. And the trial court said you failed to show that when you were talking about the tax treatment, because both parties could have addressed that issue in the judgment of dissolution. I am simply asserting to your honor that that five-year period, I think the parties agreed in open court in 2012, we're not going to review this for a five-year period. But child support is never non-modifiable in my opinion. I think if something significant had happened to mom and she lost her job, she would have been able to come in and file a petition. But then we have that saving language in the judgment of dissolution which says, really notwithstanding this time period, the downward deviation or the offset shall be considered in future determinations. In determining whether or not that offset is really an offset in maintenance versus a downward deviation in child support, should we look to the court's language in that order that does not include language that would suggest what you just indicated, that but for a substantial change in circumstances, it will be an offset of 900 for a period of five years? Should we look at that as maybe pointing more towards it being an offset in maintenance as opposed to a downward deviation in child support? Certainly that argument was made by mother, but I think the plain language of the agreement says it clearly is a downward deviation. And the example that is given in the language shows that the intention of the parties was for the child support to be determined and then a $900 deviation was to be done. And I would assert to your honors, it was because of the large disparity in the earning power of both of these individuals. And certainly Judge Reiner, at the June 8th hearing after we concluded evidence, really struggled with, is this a downward deviation or is it maintenance? And after he reviewed the plain language of the judgment of dissolution, it clearly characterizes it as a downward deviation as opposed to maintenance. And I think whichever label we put on it has an impact perhaps on the tax consequence, but on the going forward relationship with these parties and how it relates to who contributes what to the care of the children, I'm not sure it's as relevant what label we put on it, because the consideration by the trial court should be how do we provide for the needs of the children, how is that obligation shared between the custodial parent versus the non-custodial parent, and by virtue of what Judge Reiner determined, did he create a windfall? As this court noted in Bush, was not an appropriate consideration for child support. I think the substantial circumstances of these parties, regardless of how we label it, there's merit in evaluating the level of support of dad against what mom's income is. And in June of 2012, father was making $70,000. That's about an $8,000 increase from what he was earning in 2007. Mother testified that her lowest income year was $137,000, and her financial affairs affidavit, which was Petitioner's Exhibit Number 26 in June of 2012, indicated that in the preceding year she had made $436,000. So she had earned six times more than the father in this particular case. And yet father is given no relief by the court after that petition by her in March of 2011 is filed, because it's essentially, okay, now your child support, by virtue of what the statutory guideline is, is $702 every other week, so $1,404 a month. And if we applied the downward deviation, he'd be at about $504 a month for child support. With the increase in income that he had from 2007 to 2012, that probably is an appropriate differential. But without giving any consideration to the statutory factors and whether or not that downward deviation should continue, essentially Judge Reiner took this father from payments of $400 a month to $1,400 per month, which I would assert is a windfall, creates a windfall in child support, in particular when mother has a substantial income. She also testified in June of 2012 that all of the children's expenses were being met, that father paid extracurricular things, that mother was able to meet their expenses, and actually she testified that her household expenses were half in 2012 what they were in 2007, because her significant other was sharing equally those expenses with her. I would assert, Your Honors, that notwithstanding what the language says in terms of downward deviation or offset, the trial court had an obligation to give consideration to the factors under Section 505. And if we apply the Cornell decision or the Cook decision or this Court's Bush decision, aside from the language in the judgment of dissolution on any petition for modification, it would require the trial court to weigh those things. I would assert, Your Honors, that the trial court in this particular instance abused discretion in that way. And it's really substantially shown in the July 2014 decision that Judge Reiner meets on the inheritance piece, because he acknowledges right in that decision that because of mother's substantial income and because of the other circumstances that were proven during the course of the June 2012 hearing, I believe it's appropriate to apply a downward deviation. So he chooses to do that on the single payment of an inheritance that father receives. And I would agree with mother's counsel that it is a two-pronged test on that inheritance, first, whether or not it's going to be considered income because of the fact that it's a one-time single event, and then secondly, whether or not it's appropriate to apply the factors of a downward deviation. And Judge Reiner clearly says that the circumstances of these parties require a downward deviation to be applied on the inheritance piece. But at exactly the same time, he chooses to ignore that on the child support obligations. And I would assert that those are legally and factually inconsistent and that they were an abuse of discretion. I understand that that's a high standard. But I believe in this instance that the decisions warrant a reversal of Judge Reiner's decision on those two orders. I will just briefly relate to your honors that the one additional issue that we appealed was actually an older issue that we appealed when the cases were bifurcated on visitation versus support. The one remaining visitation issue that we had sought review on was the right of first refusal. Our brief lays out pretty well, I think, what the argument there is under 2607, that we have a circumstance now that Judge Reiner modified that right of first refusal where father's rights are actually subordinate to the grandparents' rights. Now, counsel will argue that that issue was not properly before the trial court, but both parties at that time had filed competing petitions for visitation, and both of those parties in their petitions for visitation asserted that this right of first refusal provision had not been appropriately applied and actually had been abused in certain circumstances. Judge Reiner, specifically in his October 28, 2011 order, says yes, that trip to Ottawa that mother took was a violation and for that reason he changed it. I believe that gives this court jurisdiction to deal with that issue also, and we would ask for a reversal. Thank you, Ms. Wall. Ms. Oger? You know, I don't come down here and defend something on appeal when I lost at the trial court level very often, but that is what's happened here. And it makes for a set of unusual facts. I would ask that you start your review of this by looking at the appendix. I am the one who filed motions, right? I filed a motion because my client had a significant other, and we wanted him to be able to stay with the children when she traveled, much like the grandparents, right? There's no other pending petition. I lost that. The judge said no. The paramour, nah, that's not going to happen. And yet I'm here defending something that happened a long time ago because the judge said, well that's become an issue so I'm going to clarify. So that's it. There was no pending petition to change that. I ask that you look at the record. There is no pending petition with regard to that issue. So now let's go to the second issue. And I was listening to argument and I thought, am I wrong? I want to double check this. No. The only person who had a pending petition to modify the judgment of dissolution was me again. And it was a two-count petition. The first count was on this issue of this $900. And look at my pleading. I asked the court to let us write a check for $900 and set his child support at the appropriate amount. That's what my prayer for relief was. I didn't ask that he call it maintenance. I didn't ask that he do anything other than have us write two separate checks. That's count one. Count two was simply to say, he's had an increase in child support. Give me my increase in child support. I didn't ask to get rid of the $900 deviation. I didn't say we shouldn't pay a $900 deviation for five years. I simply said in count one, give me a two-step process. And in count two, he's had an increase in his income. Give me my child support. Much like the language says. We're entitled to an increase in child support. And then you offset what that is within that five years. So I lost again. I lost twice. And yet I'm here in this court. Judge Reinhardt said he wasn't going to do a two-step process. He was not going to give me my request of relief, which was for me to have one check going to him for $900 and for his child support to be set at the appropriate amount. Judge Reinhardt said, not going to do it. We're going to let the IRS do that. And that is very similar to what Judge Suit had done in 2009. Nobody appealed that. That was when Father had actually filed a motion trying to get clarification on it. Judge Suit said, I'm not going to get into whether this is maintenance or not maintenance. Let IRS deal with that. We thought by having a two-step where she wrote a check and he wrote a check, it would be very clear to the IRS. And there's no dispute about it that that was our intent. So those were the two things I lost on. What did I win on? Why am I here? I'm here because the judge took Father's pay, calculated 32% for three children, and gave me that 32% subtracting $900 for the five-year period that the parties agreed to. That's all the judge did. The judge gave me 32%, which is exactly what the statute suggests, which is exactly what should occur. That $900 deviation, I submit, I mean, that's why I put an additional statement of facts and put that in there. I think that language is very clear. In exchange for any claims of maintenance by respondent from petitioner or in lieu of claims of an offset, in lieu of claims of offset, said offset of $900 per month shall continue for a period of five years. The issue was then, well, we knew that in a five-year period, it was not realistic to think that we were going to go for five years without an increase in child support. We knew that in five years, people would come back and seek an increase in child support. That definition then says, well, okay, in the future instances, go ahead, increase this child support, but in that five-year period, reduce it by the $900, and that's what was done. Counsel has raised the difference of the income of the two parties. Quite frankly, that's why my client was paying maintenance. I mean, that's what this entire thing was designed to do. We simply didn't want to send one check one way and one check another. Something to live and learn, I'll do it that way from here on out. But when we were drafting this document, it was simply a method to have one check going one way. He was going to receive maintenance for five years. It was going to terminate in five years. Now, counsel says a couple things. First of all, the judge erred because a substantial change in circumstance warranted a termination of the downward deviation. No. The agreement says that that downward deviation is going to terminate. Your Honor, we also put in our documents, or in the documents, the child support calculations. Up until September of 2012, he received his reduction. So we did seek child support in March of 2011. Judge Reinert made that retroactive appropriately. But from March of 2011, you can see we've got all the math in there. All the math about how he has given credit on the retroactivity, what the increase was, and how that worked. And so he was given credit for his $900 through September. The $900 deviation terminated as of that date. And then the child support was set at 32% without the downward deviation. Counsel, in her argument, says what you are to consider is whether the circuit court abused its discretion in finding that a substantial change in circumstance warranted the termination of the downward deviation. That's not what the trial court did. All the trial court did was enforce the agreement that said that downward deviation was going to terminate in five years. The court didn't even find there was a substantial change in circumstances, except for the increase in Mr. Wells' income, at which point we increased the child support. And again, increased the child support to 32% up until September of 2012. The $900 was taken off. Then we got 32%. That's it. That's how simple this case is. Then we get this issue of, well, it's a windfall. And I state in my brief, and I saw it again, he got three boys, all teenagers or preteens. I'm pretty sure that the $700 biweekly that Mr. Wells is paying probably feeds them. Because if you fed preadolescent and adolescent boys, you know where I'm going for. Plus, the evidence was clear that these boys were in numerous activities. We had football. We had all sorts of activities. You've got shoes. You've got uniforms. You've got helmets. You've got everything that's necessary. So the idea that this $700 biweekly is some sort of windfall is crazy. And counsel relies upon Turner v. Bush. Turner v. Bush has nothing to do with this case. In Turner v. Bush, Judge Casely came and said, well, no one needs that much money to support a child, but I'm going to use the statutory guidelines, and this money is going to go into a trust. And this court appropriately said, you can't just have the child support going into a trust for the kid. The statute doesn't allow that. That's nothing along the lines of what Reiner did. All that Judge Reiner did was say, he needs to be paying his 32%. He needs to get the benefit of his bargain. He needs to get his $900 for that five years, and then he pays his 32%. And that is how simple this case is. I would ask that you look at my actual petition for modification. Nowhere do I say to terminate that deviation. Nowhere do I say that the substantial change in circumstance that I allege is that he has had an increase in his pay resulting in an increase in child support, which was actually considered and explained in the court order about how that was going to be handled in the future. I think there's really no way. If you're looking at how Judge Reiner interpreted this, there's no way it's against the manifest way of the evidence. He said that for five years he got the benefit of his bargain. After five years, he pays his 32%. So that's where we are. The next issue then becomes, and I think I've touched on it, but this issue of the abuse of discretion in this lump sum payment on the inheritance. Before you get to that, Ms. Wilker, I've been thinking about something you've said. You've got a serious look on your face there. Don't read anything into that. The status of the pleadings at the time Judge Reiner hears this, you've indicated you had something pending, your client did, the other party did not. So you've indicated that you simply are looking at that 900 offset as having expired and now there's a change of circumstances where his income has increased and requesting Judge Reiner to increase it from 32% of what his income had been to 32% of what the new income was. So would there have been any opportunity for Judge Reiner to deviate below 32% of what the prior income had been? And I would submit to you, no, there is not. And the reason there is not is because there was not a pleading. And if you want deviation in the state of Illinois, it is your job to come and say, I am seeking a deviation and these are the reasons I'm seeking a deviation, so that everybody is on notice and knowing that you are asking for a deviation. And there is no pleading requesting deviation. And understanding that, that there's no pleading, is there argument here in the record that would take the place of a written pleading in this circumstance where he made the request to deviate below 32% of his prior income? I don't know how to answer that. Does that end up in the record? I don't recall if it's in the record or not. I don't believe so. Because I think they were holding on this idea that there was a dispute on everybody's part. Is it maintenance or is it not maintenance? Is it a modification of child support? I mean, I think that that was something that everybody tossed around. But your position would be that it would have to be in a written request in order to be properly before the court with notice given. I don't know how a court is going to deviate. I don't think anybody wants to say a court can just sue a sponte and deviate without a request for deviation when that deviation terminates. But isn't that one of the factors the court always has to consider in setting child support, whether or not a deviation is appropriate? Absolutely. And I think that Judge Reiner, I think that he should be affirmed because I think he looked at everything. And I think he set child support and found there really wasn't any reason for deviation. Thirty-two percent, is it serious? I mean, it's what it should be paying. But he did, and I think a threat of an argument made by counsel is that, well, how can you have 32 percent over here and 15 percent over here? That was a threat of an argument I heard today. And I think that's very clear. There was this lump sum, and I think that Judge Reiner was following that case law that we've set forth because we gave it to him at that time in terms of where the court was on the inheritance. We gave the court Mayfield, In re Marriage of Rogers. And it was the Mayfield case that says it's that two-step process. First of all, is it income, which I don't think anyone's really disputing here. And second, what should the percentage be when it is in a lump sum payment like that? And I think that Judge Reiner followed that prior case law in Mayfield, in Rogers, and in others by setting that child support at that 15 percent. I'm sorry, it's 20 percent. We received $15,000. We only received 20 percent of the lump sum payment. And so I think, I don't mean to be making counsel's argument, but that's the only argument I really see here, is how could Judge Reiner have said 32 percent is appropriate here and 20 percent is appropriate here, and I submit to you that in the cases that we have submitted to you and in the cases that we gave to Judge Reiner, that's perfectly acceptable because it is that lump sum. And so where it is that lump sum, the case law indicates it doesn't have to be that full 32 percent. So, I mean, I think that that is the only real argument. I honestly think this is a very simple, straightforward case. I ask that you look at what the court order said and how the original court order came down. I would submit to you that Judge Reiner properly interpreted this to say that it was going to terminate in five years, and indeed it terminated in five years. There was no petition for a deviation. Not only was there not a petition for a deviation, there was not a petition to continue this past five years. There was not a petition to say, well, let's call it maintenance and extend that maintenance. There was nothing along those lines in terms of what Judge Reiner's ruling was. So, with regard to that, I mean, again, I think this is a, you need to, instead of muddying the waters, let's clear them up. Here's the language. Clear interpretation of the language, what Judge Reiner, how Judge Reiner defies this language to the facts that were in front of him is certainly appropriate. The child support was set at 32%. A $900 downward deviation was given in exchange for maintenance. And, in fact, everyone agreed that he was probably going to get maintenance for about five years at a rate of around $500, because my client made more money, no dispute. So he got his five years of maintenance in the form of a lesser amount of child support. That was the benefit of the bargain. That's how Judge Reiner saw it. That's how he interpreted it. That cannot be against the manifest way of the evidence, because if you read this, it's fairly straightforward. So I think that's, it's just not that hard of a case in terms of the child support component of it. The secondary part of that is really that right of first refusal, and I think my brief sets that out as well. I was asking to have that done away with. I was asking to terminate that completely, so that there would be no right of first refusal, and like I said, I lost. And Judge Reiner simply clarified it and said, you have to give so many days notice, the grandparents can only do it so many times a year, father has the right to, you know. And so he actually strengthens. If you look at what was originally done and then how Judge Reiner interpreted it, he actually strengthened father's right significantly. I just, I don't understand how that even comes up, because again, there was no petition to terminate the grandparents right of first refusal component, and that had been in place for years and years and years. So again, I would ask that instead of making this a very difficult case and something complicated, you take the road of what is most rational, what is simplest, and if you take the simplest, easiest route, it's not just that it's the easy route, it's the correct route in that, you know, child support is added 32%. And I've yet to hear an argument as to why Mr. Wells doesn't have to pay 32% like everybody else in the state of Illinois that has three children that they're paying child support for. So again, I don't think, there was no pending petition to deviate. I don't think there was adequate evidence for a deviation, even if you assume, Justice Harris, that that is correct, that the court could have sua sponte, just deviated if it wanted to. There still wasn't the evidence of it. There wasn't evidence of that. I mean, counsel says, what do you make, $72,000 a year? Why shouldn't he pay his 32%? I mean, I've got guys making $19,000 a year that are paying their child support, as set by the statute. So I think that Judge Reiner should be affirmed. I don't think that this is a particularly difficult case, and thank you. Thank you. Ms. Wall. Very briefly, Your Honors. I want to make a comment regarding the pending petitions. Counsel indicates there was no pending petition by father on the visitation. There clearly was. October of 2009, he filed a petition to modify the visitation. There was an issue with the manner in which these parties were managing their visitation. So he had one on file in March of 2010. Mother filed a petition for visitation. So with respect to that visitation issue, I simply disagree on what the record shows. But Your Honors have the ability to look at the record. It's C-210 to 215, I think, is my client's petition on the visitation right of refusal issue. And I think clearly that issue is before Your Honors because Judge Reiner made it in the October 28, 2011 order. What about a pending pleading as to the downward deviation in child support? I was just going to indicate to Your Honor that we did not have a competing petition with counsel's petition for modification. But I would assert to Your Honor that we did file an answer. And in that particular answer, we denied the assertions that counsel was suggesting that this $900 was maintenance. She stands before Your Honors and she says, he got the benefit of his bargain because it was maintenance. And that's what was determined. Judge Reiner said that downward deviation is exactly what the judgment of dissolution said. A downward deviation. And we argued relentlessly during the June 2012 proceeding that that downward deviation should remain. I don't believe that there's anyone who can read through that June 8, 2012 report of proceedings and argue that I, on behalf of father, didn't argue relentlessly that he should be allowed to continue to have that downward deviation. And in fact, Judge Reiner says at the end of that report of proceedings, come back to counsel, come back to chambers, because I want to have further dialogue about this. And then he's completely exasperated because he's changed his mind. And he says that in his order of August 10, 2012. You're right, counsel. It was a downward deviation. Counsel suggests to you that that downward deviation expired at five years and could never be considered again. If this court accepts that argument, then father bound himself to a five-year downward deviation regardless of any circumstances that would ever come about again. And I don't think the parties can do that. I think the court has an obligation to consider the factors under 505 any time the court is reviewing child support. And simply because one party filed a petition that said, I believe there's been a substantial change of circumstances, certainly I don't believe that it requires the other party to file a competing pleading other than an answer to that petition that says, I disagree with that. I think the court has to sua sponte, consider those factors, consider those guidelines. Counsel says, well, why shouldn't he pay his 32%? He was making $70,000, but in this instance, the wife was making $436,000. And if the cases before this court previously have precedent, that certainly has to be given consideration going forward on the deviation. And I think it would be appropriate in this case. I would ask that the decision of the lower court be reversed. Thank you, Your Honor. Thank you. Thank you, counsel. The case will be taken under advisement and a written decision will issue. The court stands in recess.